**CONSERVATION LAW FOUNDATION OF NEW ENGLAND, INC., et al., Plaintiffs, Appellees,**

v.

**William K. REILLY, as he is Administrator of the United States Environmental Protection Agency, Defendant, Appellant.**

**CONSERVATION LAW FOUNDATION OF NEW ENGLAND, etc., et al., Plaintiffs, Appellants,**

v.

**William K. REILLY, as he is Administrator of the United States Environmental Protection Agency, Defendant, Appellee.**

Nos. 91–1257, 91–1269.

United States Court of Appeals, First Circuit.

Heard July 29, 1991.

Decided Nov. 25, 1991.

Rehearing and Rehearing En Banc Denied Dec. 30, 1991.

---

Anne S. Almy, Atty., Dept. of Justice, Environmental and Natural Resources Div., Washington, D.C., with whom Richard B. Stewart, Asst. Atty. Gen., Wayne A. Budd, U.S. Atty., George Bunker Henderson, Asst. U.S. Atty., Boston, Mass., John A. Bryson, W. Christian Schumann, and Vicki L. Plaut, Attys., Dept. of Justice, Environmental and Natural Resources Div., Washington, D.C., were on brief for William K. Reilly, Adm'r, U.S.E.P.A.

Stephen H. Burrington, Boston, Mass., for plaintiffs Conservation Law Foundation of New England, Inc.

Before TORRUELLA, Circuit Judge, BOWNES and HILL,* Senior Circuit Judges.

TORRUELLA, Circuit Judge.

This appeal raises the question of whether plaintiffs, two New England-based environmental organizations, have standing to obtain nationwide injunctive relief against the Administrator of the Environmental Protection Agency (EPA) for his failure to assess and evaluate the hazardous waste problems in each of approximately 840 federal waste sites, scattered throughout the country, as allegedly required under section 120(d) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9620.

---

\* Of the Eleventh Circuit, sitting by designation.

1. A facility may contain several potential hazardous waste sites. The EPA, for example, has

## I

CERCLA is essentially a remedial statute designed to address the "serious problem of hazardous substance [activity]." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1078 (1st Cir. 1986). Section 105 of CERCLA directs the President to maintain a plan for responding to releases of hazardous substances. 42 U.S.C. § 9605. This plan is called the National Contingency Plan. Section 105 also directs the President to compile a list setting forth national priorities among actual or threatened releases of hazardous substances. *Id.* This list is called the National Priorities List.

Section 120 provides that CERCLA applies to federal facilities, and imposes a number of deadlines and requirements governing releases at such facilities. 42 U.S.C. § 9620(a)–(h). Section 120(c) of the CERCLA requires the Administrator of the EPA to establish a Federal Agency Hazardous Waste Compliance Docket and to update the docket every six months. The Administrator has established the docket and on the last update, identified a total of 1296 federal facilities that manage hazardous waste or have potential hazardous waste problems. *See* 55 Fed.Reg. 34492 (1990).[1]

Once a facility has been listed on the docket, the Administrator must by

> [n]ot later than 18 months after October 17, 1986, ... take steps to assure that a preliminary assessment is conducted for each facility on the docket. Following such preliminary assessment, the Administrator shall, where appropriate—
>
> (1) evaluate such facilities in accordance with the criteria established in accordance with section [105 of CERCLA] under the National Contingency Plan for determining priorities among releases; and
>
> (2) include such facilities on the National Priorities List if the facility meets such criteria.

identified thirteen potential hazardous waste sites at Hanscom Air Force Base in Massachusetts.

... Evaluation and listing under this subsection shall be completed not later than 30 months after October 17, 1986.

42 U.S.C. § 9620(d).

Plaintiffs Conservation Law Foundation of New England, Inc., and Watertown Citizens for Environmental Safety, brought suit under the citizen-suit provision of CERCLA, 42 U.S.C. § 9659, alleging that the EPA's Administrator failed to comply with the mandate of Section 120(d) of CERCLA, namely, that "evaluation and listing [of the facilities on the Federal Agency Hazardous Waste Compliance Docket] shall be completed not later than 30 months after October 17, 1986." 42 U.S.C. § 9620(d).[2]

The Administrator acknowledges that full preliminary assessments have been completed for only 615 of the approximately 840 sites from the original docket. Of these 615, 88 sites have been listed on the National Priorities List and 273 have been determined to need no further remedial action.

Plaintiffs have identified at least ten individual facilities in New England near which individual members of plaintiffs organizations resided, worked, or carried out recreational activities. The Administrator concedes that plaintiffs have standing to pursue their claim with respect to these local federal facilities. However, the Administrator asserts that plaintiffs have no standing to obtain a nationwide injunction directing the EPA, on a court-ordered schedule, to assess and evaluate for listing on the National Priorities List, all of the federal facilities that manage hazardous waste or have hazardous waste problems.

In the district court, the Administrator moved for partial summary judgment arguing that plaintiffs lacked standing to obtain nationwide injunctive relief against the EPA because they failed to assert injury-in-fact with respect to all of the federal facility sites. Plaintiffs also moved for summary judgment asserting that the citizen provision of CERCLA authorized nationwide relief in a private suit against the EPA to protect the public interest in EPA's full compliance with the mandate of section 120.

After a hearing on the parties' motions, the district court held that since some of the individual members of plaintiffs organizations had alleged injury-in-fact with respect to some of the facilities where they live, work or carried on recreational activities, the plaintiffs organizations had standing to "pursue the legal rights of the general public and request a remedy for all of the national sites for which the Administrator is responsible." *Conservation Law Foundation, Inc. v. Reilly*, 743 F.Supp. 933, 940 (D.Mass.1990). In a subsequent opinion, the district court ordered the Administrator to comply with the mandate of section 120(d) by a specific date. *Conservation Law Foundation, Inc. v. Reilly*, 755 F.Supp. 475, 481 (D.Mass.1991).

We reverse.

## II

■ The standing doctrine reflects prudential and constitutional limitations upon the exercise of federal jurisdiction. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The constitutional limitations derive directly from Article III and require a plaintiff to "allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)). This concept of "distinct and palpable" injury, or "injury-in-fact," is grounded on Article III's restriction of federal court jurisdiction to cases or controversies, which manifests the "concern about the proper—and properly limited—role of the courts in a democratic society." *Allen, supra*, 468 U.S. at 750, 104 S.Ct. at 3324 (quoting *Warth, supra*, 422

---

**2.** Plaintiffs also sought injunctive relief directing the EPA to perform a nondiscretionary duty to promulgate regulations under Section 120(h) of CERCLA, 42 U.S.C. § 9620(h). Since EPA subsequently promulgated the regulations at issue, the district court dismissed this claim as moot. Plaintiffs do not challenge that judgment on appeal.

U.S. at 498, 95 S.Ct. at 2205); *Muñoz–Mendoza v. Pierce,* 711 F.2d 421, 424 (1st Cir.1983) ("The constitutional standing rules seek to ensure that a concrete Article III 'case or controversy' exists by focusing on plaintiff's 'harm'.").

■ The prudential standing limitations prevent a court from adjudicating "questions of broad social import where no individual rights would be vindicated and ... limit access to the federal courts to those litigants best suited to assert a particular claim." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985) (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979)).

The citizen-suit provision of CERCLA, Section 310, provides in pertinent part:

> [A]ny person may commence a civil action on his own behalf—
>
> . . . .
>
> (2) against the President or any other officer of the United States (including the Administrator of the Environmental Protection Agency ... where there is alleged a failure of the President or of such other officer to perform any act or duty under this chapter, including an [nondiscretionary] act or duty under section 9620 of this title....

42 U.S.C. § 9659(a).

■ The district court held that CERCLA's citizen-suit provision "remove the prudential limits on standing, including the general rule that a party may not pursue a third party's rights." 743 F.Supp. at 940. Admittedly, Congress may grant a right to sue to persons that might otherwise be barred by prudential limitations. *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206. But Congress may not expand by statute the standing limitations imposed upon it by Article III. *Gladstone, Realtors, supra,* 441 U.S. at 100, 99 S.Ct. at 1608 (Congress may define standing as broadly as permitted by Article III); *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 209, 93 S.Ct. 364, 366, 34 L.Ed.2d 415 (1972) (same).

■ Organizations such as plaintiffs have standing to bring suit on behalf of their members if:

> (a) [the] members would otherwise have standing to sue in their own right; (b) the interest [they] seeks to protect are germane to the organization[s'] purpose; (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Com.,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *see also International Union, United Auto., etc. v. Brock,* 477 U.S. 274, 286, 106 S.Ct. 2523, 2531, 91 L.Ed.2d 228 (1986). In this case, plaintiffs have offered the affidavit of ten of their members who reside, work or carry out recreational activities near ten of the federal facilities slated for review and possible inclusion in the National Priorities List. These individual members have standing to seek injunctive relief against the Administrator with respect to the individual federal facilities that threaten to or actually harm them. But their allegations of injury-in-fact are insufficient to warrant the type of nationwide relief they seek in the complaint.

Plaintiffs argue that they have met the Article III minima of injury-in-fact because their members reside in four dozen cities and towns in which a federal facility on the hazardous waste docket is located. The injury alleged by plaintiffs is "the increased threat to public health and natural resources from exposure to contaminants from the unevaluated facilities." Brief of the Plaintiffs–Appellees at 12. But this showing of general harm—better described as injury to plaintiffs' environmental interests—is insufficient to support standing in this case. The Supreme Court has consistently held that the harm required under Article III has to be more particularized. Otherwise, a court may grant a remedy to persons who may have suffered no injury, or who may not exist at all. *See, e.g., Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983) ("Abstract injury is not enough.").

Recently, in *Playboy Enterprises, Inc. v. Public Service Com.*, 906 F.2d 25 (1st Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990), we faced two standing issues: (1) whether a cable programmer had standing to sue when its claim for relief rested on the rights of a third-party, cable operators, and (2) whether an association of cable operators had standing to sue on behalf of its members.

We found that the cable programmer had third-party standing to properly bring suit on two principal grounds. First, a special relationship existed between the programmer and the cable operators, so that the violation of the cable operators' rights, limited the programmer's own rights. *Id.* at 37. Second, the programmer alleged in the complaint that practical obstacles existed, which made the cable operators reluctant to raise their own rights. *Id.* at 38. None of these *jus tertii* standing elements are present here. More significantly, in *Playboy Enterprises*, the constitutional standing issue was not seriously disputed; there was no question that the programmer had Article III standing. *Id.* at 36 ("Article III does not prevent the court from addressing [the programmer's] claim.").

As discussed above, an association has to meet the three-prong test of *Hunt v. Washington State Apple Advertising Com.* to have standing to bring suit on behalf of its members. In *Playboy Enterprises*, the association of cable operators satisfied the first element of the *Hunt* test because at least one of its members alleged particularized harm sufficient to give that member standing on his own. Unlike the member of the association in *Playboy Enterprises*, none of the individual members of plaintiffs here have showed that they suffered injury directly traceable to the alleged illegal conduct, namely, defendants' failure to assess and evaluate federal hazardous waste sites throughout the United States. To illustrate, regarding the failure of the Administrator to assess and evaluate the hazardous waste problem at the Naval Station in Pearl Harbor, Hawaii, the ten members of plaintiffs who have presented affidavits, all residents of New England, have shown merely the claim of a "concerned bystander." *Allen*, 468 U.S. at 756, 104 S.Ct. at 3327.

## III

The Administrator asserts that *Lujan v. National Wildlife Federation*, —— U.S. ——, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), closely resembles this case. Plaintiffs seek to distinguish *Lujan* on the ground that it is a suit brought under section 10 of the Administrative Procedure Act (APA), rather than the citizen-suit provision of CERCLA. To the Administrator, this distinction is irrelevant "because nothing in the CERCLA citizen-suit provision expands the scope of relief to which plaintiffs would be entitled beyond their own injury." Brief for Appellant at 14.

In *Lujan*, the National Wildlife Federation ("NWF") alleged that the Bureau of Land Management ("BLM") and other agencies had violated the Federal Land Policy and Management Act of 1976 ("FLPMA")[3] and the National Environmental Policy Act of 1969 ("NEPA")[4] in conducting the BLM's "land withdrawal review program." The issue before the Supreme Court was whether the affidavits of two members of NWF were sufficient to establish a genuine issue of fact as to whether the NWF had a right to relief under section 10 of the APA. Section 10 requires a "final agency action" and a showing that plaintiff was "adversely affected or aggrieved" by the conduct challenged. The Court held that even if certain affidavits of NWF members adequately showed that the affiant were "adversely affected or aggrieved," plaintiff NWF would still have no standing under section 10 of the APA to challenge the "land withdrawal review program" because the program was not a final agency action. The Supreme Court, therefore, denied standing to the plaintiffs because they failed to meet the standing requirements of the APA.

**3.** 43 U.S.C. § 1701 *et seq.*

**4.** 42 U.S.C. § 4321 *et seq.*

While we agree with plaintiff that *Lujan* is not controlling in this case, we think plaintiff's interpretation of the citizen suit provision of CERCLA is flawed. According to plaintiff, the citizen suit provision of CERCLA is a grant of jurisdiction so broad that the federal courts may grant the relief necessary to vindicate the "public interest" in full performance by the Administrator of his statutory duty under section 120(d). The Supreme Court, however, has conclusively refused to adopt such an abstract concept of standing because it would literally grant standing to any citizen in any suit claiming that government officials violated federal law or the Constitution. *See, e.g., Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (plaintiffs who had not personally suffered a denial of equal protection by the challenged discriminatory conduct have no standing). Instead, the traditional focus is on the plaintiff before us "and not on the issues he wishes to have adjudicated." *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). More significantly, adjudication of such non-individualized, abstract issues raise serious separation of powers concerns by setting the courts on a collision course with the executive branch. *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 222, 94 S.Ct. 2925, 2932, 41 L.Ed.2d 706 (1974). Absent a showing of concrete injury, a court should not engage in the management of executive functions on such a broad scale.

Plaintiffs assert that interpreting Article III's requirement of injury-in-fact to require its members to show injury with respect to each federal site on the docket list would eviscerate the remedies of CERCLA's citizen suit provision to the private interests of the parties, rather than the public interest in EPA's full compliance with its duties under CERCLA. But the Supreme Court has squarely rejected this "public interest" basis for standing:

> The requirement that a party seeking review must allege facts showing that he is himself adversely affected does not insulate executive action from judicial review, nor does it prevent any public interest from being protected through the judicial process. It does serve as at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome. That goal would be undermined were we to construe [a standing provision] to authorize judicial review at the behest of organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process.

*Sierra Club v. Morton,* 405 U.S. 727, 740, 92 S.Ct. 1361, 1369, 31 L.Ed.2d 636 (1972).

One of the main purposes of the Article III standing requirements is to ensure the crystallization of the issues by means of our adversary system. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The absence of plaintiffs from the majority of regions of the country in this case demonstrates the lack of "concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

This lack of "personal stake" in this case is of particular concern; plaintiffs seek relief far beyond any injury they have established. The federal facilities review process is made up of hundreds of discrete evaluations undertaken *seriatim* by separate EPA regional offices. The ten members of plaintiffs presenting affidavits have demonstrated neither knowledge about nor interest in other federal facilities. The facilities vary in type and size, as well as in the scope and complexity of hazardous waste problems at each. Some sites are accessible to the public; others are open to those with security clearances. Because plaintiffs have ties to only a few federal facilities, they have failed to carry their burden of showing injury-in-fact sufficient to grant them standing to obtain nationwide injunctive relief.

*Reversed and remanded.*