**REMUS JOINT VENTURE and Environmental Disposal Systems, Inc., Plaintiffs–Appellants (95–2286/95–2389), Cross–Appellees,**

v.

**Beverly McANALLY, William Wadsworth, Randolph Gear, Mary Ann Banks, and David Paul, Defendants–Appellees, Cross–Appellants (95–2346/95–2390).**

Nos. 95–2286, 95–2346, 95–2389 and 95–2390.

United States Court of Appeals, Sixth Circuit.

Argued May 1, 1997.

Decided June 24, 1997.

Lawrence R. Ternan (argued and briefed), Nicole D. Bogard (briefed), Beier & Howlett, Bloomfield Hills, MI, for Plaintiffs–Appellants Cross–Appellees.

Marcia L. Howe (argued and briefed), Michael E. Rosati, Carol A. Rosati (briefed), Johnson, Rosati, Galica, Shifman, LaBarge, Aseltyne, Sugameli & Field, Farmington Hills, MI, Barry A. Seifman, Berry, Francis, Seifman, Dearborn, MI, for Defendants–Appellees Cross–Appellants.

Before: WELLFORD, MOORE and COLE, Circuit Judges.

MOORE, J., delivered the opinion of the court, in which COLE, J., joined. WELLFORD, J. (pp. 186–87), delivered a separate concurring opinion.

## OPINION

MOORE, Circuit Judge.

This case presents us with an unusual situation in which the district court dismissed this action based on, among other things, abstention, and now no party is asking us to reverse the abstention ruling. Because we find no case or controversy before us, we dismiss this appeal.

## I. BACKGROUND

In the summer of 1990, Douglas F. Wicklund, the sole officer and director of Environmental Disposal Systems ("EDS"), and various Romulus, Michigan city officials began discussions regarding EDS's desire to locate a commercial hazardous liquid waste injection well in Romulus. EDS informed the city officials that jurisdiction over the well rested exclusively with the U.S. EPA and the Michigan Department of Natural Resources ("DNR"). Nonetheless, EDS still sought a resolution from the Romulus City Council welcoming the well project. On December 20, 1990, the City of Romulus, by a 4–3 vote of the city council, adopted the following resolution welcoming EDS:

[T]he City Council of the City of Romulus acknowledges the permitting and regulatory responsibilities of the U.S. Environmental Protection Agency and Michigan Department of Natural Resources for approval of siting and monitoring of construction and long-term operation of the proposed facility, and will abide by the findings of these two agencies where not in conflict with local laws and regulations and not preempted by State and Federal law.

Joint Appendix ("J.A.") at 52. After the meeting, the council requested an opinion from the city attorneys as to whether local regulation of the well was preempted by state or federal regulations. The city attorneys expressed the opinion that local regulation of hazardous waste was preempted by state and federal law. J.A. at 53–57.

During 1991, EDS obtained approval for the well from the EPA and the DNR. J.A. at 359, 361. This approval, however, did not stop the Romulus City Council from passing by a 4–0 vote on August 28, 1991 a resolution rescinding its welcoming resolution to EDS. J.A. at 368. According to plaintiffs, the resolution was rescinded because of differences between Wicklund and Robert Ryan, the other principal developer of the well. J.A. at 20 (Plaintiffs' Compl. ¶ 19). Wicklund and Ryan apparently settled their differences by mid–1992, at which time Remus Joint Venture was formed. Wicklund and Ryan then met with Beverly McAnally, the Mayor of Romulus, who informed them that she would contact the city attorneys to ascertain again what regulatory authority the city would have over the proposed well. Once again, the city attorneys expressed the opinion that federal and state law preempted local regula-

tion over the well. J.A. at 136. According to plaintiffs, when one of their attorneys contacted one of the city attorneys to ask him if EDS could have a written statement that the proposed well would not be in violation of local requirements, including zoning laws, the city attorney responded that "[y]ou don't need anything from us! This matter is completely governed by the EPA and the DNR[,] and Romulus has nothing to do with it." J.A. at 143 (Hoops Aff.).

After obtaining various work-related permits for the well, none of which concerned the zoning for the well, plaintiffs began construction on the well project. According to plaintiffs, the drilling continued twenty-four hours a day for a month, with EDS using a drilling rig with unmuffled, turbo-charged diesel engines and a 120–foot high derrick with aircraft warning lights. EDS also contends that during the drilling period, it continued informal conversations with various city officials and that the officials continued to state that the city had no jurisdiction over the well project. This informal local support, however, suddenly changed to formal opposition.

On September 24, 1993, EDS learned that a group of individuals led by Mary Collins, a candidate for the city council, was opposed to the well. EDS attempted to quell concerns about the well at various public gatherings, but apparently to no avail. On October 15, 1993, the city issued three appearance tickets to EDS, alleging separate criminal violations of the city zoning ordinances. Three days later, the Romulus City Council voted to authorize the city attorney to file suit to enjoin the well project.

## II. PRIOR PROCEEDINGS

The City of Romulus filed suit in Wayne County Circuit Court ("state court"), seeking to enjoin the well project on the ground that EDS had violated the local zoning ordinances. EDS counterclaimed, contending that the city was preempted from regulating the well in any manner and that, even if preemption did not apply, the city was estopped from enforcing its zoning laws based on its prior representations. The state court entered a preliminary injunction prohibiting any further activity by EDS during the pendency of the action. On July 5, 1994, the state court granted the city's motion for summary disposition of EDS's preemption defense, finding that local zoning laws were not preempted. The court then stayed any further proceedings in state court until plaintiffs exhausted their administrative remedies.

Plaintiffs then turned to the local zoning board of appeals for relief. On April 5, 1995, the board determined that the proposed hazardous waste injection well did not fall within the acceptable uses for the district in which it was to be constructed. The board also denied EDS's alternative request for a use variance. Both of these determinations were affirmed by the Wayne County Circuit Court on May 15, 1996, at which time that court also rejected EDS's estoppel argument. Shortly thereafter, the court vacated the portion of its opinion relating to estoppel so that the issue could be further developed by both sides.[1]

Plaintiffs filed the present action, based on 42 U.S.C. § 1983, in federal district court on January 26, 1995, alleging violations of procedural due process, substantive due process, and equal protection.[2] The defendants filed a motion to dismiss, which was granted by the district court. J.A. at 160 (District Ct. Order). The district court first found that both *Burford* and *Pullman* abstention[3] ap-

---

1. The parties included some of the state court orders in the joint appendix and apprised us of other orders via motions. *See* J.A. at 576 (preliminary injunction order); J.A. at 699 (July 5, 1994 order); Defendants' Response to Plaintiffs' Motion to Supplement Record on Appeal (containing copy of May 15, 1996 order and subsequent August 6, 1996 order vacating portion of May 15 order).

2. Plaintiffs also asserted a claim under 42 U.S.C. § 1985, alleging that defendants conspired to

interfere with their civil rights. Plaintiffs subsequently agreed to a dismissal of this claim with prejudice.

3. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

plied, and concluded that dismissal based on abstention was proper. It further found that some of plaintiffs' claims were not ripe. Finally, it concluded that defendants were shielded by qualified immunity largely because, in the court's view, plaintiffs failed to demonstrate a vested property interest in their proposed use of the well site; the court reasoned that without any protected property interest, plaintiffs could not establish that defendants violated clearly established law. In its concluding paragraph, the court stated that "the dismissal of Plaintiffs' federal claims is warranted for any of the reasons that have been set forth above." J.A. at 176 (District Ct. Order at 17). The court did not rule on plaintiffs' pending motion to amend their complaint to add a new defendant and a new procedural due process claim. Shortly thereafter, however, the district court issued two orders, J.A. at 233, 235, both of which denied plaintiffs' motion to amend for the reasons set forth in the court's initial decision, i.e., the court concluded that plaintiffs' motion contained nothing that would cause the court to alter its original decision. Plaintiffs appealed the district court's orders, and defendants filed a cross-appeal, contending that the district court also should have found that they were protected by absolute immunity and that none of plaintiffs' claims was ripe. In the cross-appeal portion of their initial appellate brief, defendants also contended that sanctions were warranted against the plaintiffs for filing a frivolous appeal.[4]

After the district court rendered its decision, plaintiffs filed a complaint in Michigan state court that included the claims raised in the federal dispute as well as additional claims. On February 18, 1987, the same state circuit court that was handling the original state litigation issued a seventy-five page opinion, in which the court addressed the estoppel issue pending from the previous state-court action and the new issues raised in plaintiffs' recently filed state-court complaint. See No. 96–630337–CZ (Mich.Cir.Ct. Feb. 18, 1997). The court first concluded that its initial conclusion in favor of defendants on the estoppel issue was correct. Id. at 21–34. It then turned to defendants' argument that res judicata should be applied to the federal district court decision. Recognizing that the federal district court's determinations had rested on alternative grounds, two of which did not involve the merits, the state court concluded that "the dismissal of EDS'[s] claims can have no preclusive effect in the 1996 [state] case." Id. at 46. After reaching this conclusion, however, the court turned to the fact that the district court, in its decision to deny plaintiffs' motion for reconsideration, had denied plaintiffs' motion to supplement their complaint with an additional procedural due process claim. The state court concluded that this decision by the federal district court was based on the futility of amendment and thus was on the merits and entitled to res judicata. Applying preclusion law, the state court then decided that res judicata barred the similar procedural due process claim in the state-court litiga-

---

4. The filing of the cross-appeal in this case symbolizes the "throw in the kitchen sink" manner in which this case has been litigated, or more appropriately, overly-litigated. As the Seventh Circuit has stated:

> Cross-appeals for the sole purpose of making an argument in support of the judgment are worse than unnecessary. They disrupt the briefing schedule, increasing from three to four the number of briefs, and they make the case less readily understandable to the judges. The arguments will be distributed over more papers, which also tend to be longer. Unless a party requests the alteration of the judgment in its favor, it should not file a notice of appeal.

*Jordan v. Duff and Phelps, Inc.,* 815 F.2d 429, 439 (7th Cir.1987), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988). *See also* ROBERT L. STERN, APPELLATE PRACTICE IN THE UNITED STATES 124 (2d ed. 1989) ("[A] party may without out a cross-appeal present any argument in support of the judgment challenged by his adversary even if the court below has rejected or not dealt with the contention."); 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3904, at 205 (2d ed. 1991) ("Appeal procedure is streamlined in desirable ways if arguments to support the judgment are made in brief without filing an unnecessary cross-appeal. Cross-appeal procedure complicates briefing schedules and the number and length of the briefs in ways that may generate more confusion than enlightenment.").

As for defendants' request for sanctions, we refuse to consider it because it was not raised in a separately filed motion. *See* FED. R.APP. P. 38. In any event, we do not believe the appeal to have been frivolous.

tion. The state court concluded that "to the extent that the other claims of EDS depend on its having a protected or vested property interest, those claims are likewise precluded by the federal district court's conclusion that EDS has not shown a protected property interest." *Id.* at 47. Because plaintiffs' substantive due process claim also hinged on the existence or nonexistence of a protected property interest, the state court found that this claim also was barred by res judicata. *Id.* at 62. Confusing matters even more, the state court also decided that even if preclusion did not apply, plaintiffs' federal claims all failed on the merits.[5]

## III. ANALYSIS

■ Although an interesting preclusion question is presented by the unusual facts and tortuous history of this case, we need not—and indeed cannot—resolve this question or any of the issues addressed below by the district court. The Supreme Court repeatedly has reaffirmed that "[t]o qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans For Official English v. Arizona,* —— U.S. ——, ——, 117 S.Ct. 1055, 1068, 137 L.Ed.2d 170 (1997) (citation omitted). When a case becomes moot on appeal, an Article III case or controversy no longer exists, and we are without jurisdiction to consider the merits of the appeal. *Honig v. Doe,* 484 U.S. 305, 317, 108 S.Ct. 592, 600, 98 L.Ed.2d 686 (1988).

■ Because of the current posture of the parties, we no longer have a case or controversy before us. In their reply brief, plaintiffs made the following important concession:

> The appellants expect to proceed with their entire Civil Rights action in state court as ordered by Judge Cook [the federal district judge]. As a consequence, *Appellants no longer request a determination of the abstention and ripeness decisions by the Federal District Court,* but must have a review of the District Court's decision on the qualified immunity issue and whether the District Court improperly exercised jurisdiction thereon after abstaining and finding it had no jurisdiction pursuant to ripeness.

Appellants' Reply Br. at 10 (emphasis added). Plaintiffs clarified this argument somewhat in their supplemental brief addressing the impact of the state court decision:

> Based on Judge Cook's ruling, Appellants have taken their federal civil rights case to state court. By filing the state court action, Appellants have accepted the fact that their case will be decided by the Michigan courts. Judge Morcom [the Michigan circuit court judge] dismissed the federal civil rights claims, on the merits, and Appellants will appeal that ruling in the Michigan appellate courts. What Appellants are fighting for now in this appeal is a clarification that Judge Cook did not have jurisdiction to decide the case on the merits so that his decision does not have preclusive effect in state court.

---

5. We note that the state court correctly recognized that when a district court's ruling rests on alternative grounds, at least one of which is based on the inability of the court to reach the merits, the judgment should not act as a bar in a future action. *See, e.g., Pizlo v. Bethlehem Steel Corp.,* 884 F.2d 116, 119 (4th Cir.1989) ("When a dismissal is based on two determinations, one of which would not render the judgment a bar to another action on the same claim, the dismissal should not operate as a bar.") (citing RESTATEMENT (SECOND) OF JUDGMENTS § 20, cmt. e, illus. 4 (1982)); 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4421, at 207 (2d ed. 1981) ("If a first decision is supported both by findings that deny the power of the court to decide the case on the merits and by findings that go to the merits, preclusion

is inappropriate as to the findings on the merits."). The state court also correctly cited federal law in its res judicata analysis. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 87 (1982) ("Federal law determines the effects under the rules of res judicata of a judgment of a federal district court."). Nevertheless, at least in our view, the state court incorrectly gave preclusive effect to the federal district court's decision. Although the federal district court denied plaintiffs' motion to amend their federal complaint based on the futility of amendment, a decision that is on the merits, this decision in no way eviscerated the district court's alternative ruling that it should abstain. With the alternative abstention ruling intact, the district court's ultimate resolution still rested on alternative grounds, which should have prevented the application of preclusion.

Appellants' Supp. Br. at 1. Thus, appellants no longer seek review of the district court's decision to dismiss this action; they only seek review of some of the alternative *reasons* used by the district court for dismissal. They contend that this review is necessary to enable them to litigate this action in state court without the state court applying res judicata to the federal district court's decision. To this end, plaintiffs stated at oral argument that, even though they no longer sought review of the district court's decision to abstain, review of the other portions of the district court decision was necessary to "make sure that the state court does have the authority to decide all of the issues."

Because plaintiffs are not asking us to reverse the district court's decision to abstain from entertaining this federal action, we are faced with no Article III case or controversy concerning the dismissal based on abstention. Absent a review of the district court's abstention ruling, we cannot reach the merits in this case.[6] Thus, the lack of a dispute regarding abstention renders this entire federal action moot. Although this case has contained numerous complexities, our decision that no Article III case or controversy exists rests on a simple fact: plaintiffs voluntarily have abandoned an argument that was necessary for them to prevail in this federal court action. In this situation, there can be no doubt that a case or controversy no longer exists. *See, e.g., Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 215 (1st Cir.1987) ("Since [the plaintiff] is estopped from contradicting its statement that it will not pursue its antitrust count, we are presented with an appeal from the dismissal of a count which the plaintiff no longer wishes to litigate. Such an appeal does not present a live controversy."); *Wisconsin v. Baker,* 698 F.2d 1323, 1330 (7th Cir.) (stating that appeal became moot when defendants argued and lost on the issue of sovereign immunity at the district court, filed an appeal, and then contended that they no longer requested a review of the district court's sovereign immunity decision), *cert. denied,* 463 U.S. 1207, 103

S.Ct. 3537, 77 L.Ed.2d 1388 (1983); 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533.2, at 231 (2d ed. 1984) ("There can be no doubt that an action is mooted if the plaintiff voluntarily withdraws. The conclusion is so clear that only rare circumstances will create a need to express it.") (footnote omitted).

▮ Normally when a case becomes moot on appeal, the proper procedure is for us to vacate the judgment below. *E.g., Arizonans For Official English v. Arizona,* —— U.S. ——, ——, 117 S.Ct. 1055, 1071, 137 L.Ed.2d 170 (1997). "Vacatur 'clears the path for future relitigation' by eliminating a judgment the loser was stopped from opposing on direct review." *Id.* (citation omitted). The equitable remedy of vacatur normally is not appropriate, however, when the losing party's deliberate actions have rendered moot an otherwise live controversy. In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* the Court held that "mootness by reason of settlement does not justify vacatur of a judgment under review." 513 U.S. 18, 29, 115 S.Ct. 386, 393, 130 L.Ed.2d 233 (1994). As the Court explained: "Where mootness results from settlement ... the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice." *Id.* at 25, 115 S.Ct. at 391.

The reasoning in *Bonner Mall* applies equally to the present dispute. By voluntarily abandoning their request for reversal of the district court's decision to dismiss on grounds of abstention, plaintiffs have not lost their ability to contest the merits of this dispute on appeal "by the vagaries of circumstance," *id.,* but rather have knowingly and voluntarily staked out their current position in the hope that we would vacate the portion of the district court's decision that is being

---

**6.** Because plaintiffs also no longer seek a review of the district court's ripeness determinations, the analysis in the text would apply equally to plaintiffs' concessions regarding ripeness. But because the district court found that one of plaintiffs' claims was ripe for review, plaintiffs' ripeness concessions do not, on their own, wholly moot this appeal.

used against them in state court.[7] In our view, this circumstance presents an even more compelling reason than that faced by the Court in *Bonner Mall* to conclude that the equitable remedy of vacatur should not be employed. In similar situations, other circuits have reached the same conclusion. *See Scott v. Iron Workers Local 118, Int'l Ass'n of Bridge Workers*, 928 F.2d 863, 865 (9th Cir.1991) ("[A]n appellate court should not vacate a lower court opinion in a moot case in the narrow situation in which the appellant, having lost in the court below and desiring to avoid the collateral estoppel effects of the lower court decision, causes his appeal to become moot."); *Wisconsin v. Baker*, 698 F.2d 1323, 1331 (7th Cir.), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1388 (1983) ("Just as winning litigants may not bolster the preclusive effect of final judgments by deliberately mooting questions on appeal, so losing litigants may not destroy their preclusive effect by adopting the same ploy."). We therefore decline to vacate the district court's decision, and simply dismiss plaintiffs' appeal for lack of an Article III case or controversy.

Our conclusion in this case does not prevent plaintiffs from obtaining full review of their claims in state court. Although our decision not to vacate the district court's decision renders it possible that defendants will continue to invoke the res judicata defense in state court, plaintiffs can continue to argue in the state court litigation that the federal district court's decision should not have been given preclusive effect. Indeed,

such an argument, at least in our view, would have merit. *See* note 5, *supra*. But it is up to the Michigan state courts, applying federal preclusion principles, to determine the preclusive effect of that decision. *See Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 n. 11 (6th Cir.1997) ("We recognize that we do not here determine the res judicata effect of this judgment; that task is for the court in a subsequent action in which previous adjudication is raised as a defense."); RESTATEMENT (SECOND) OF JUDGMENTS § 87 (1982) (federal law governs preclusive effect of federal court judgments).

For the foregoing reasons, we **DISMISS** this appeal.

WELLFORD, Circuit Judge, concurring. I concur in the thorough opinion of my colleague, Judge Moore. However, I would also be inclined to hold, as an alternative basis for dismissing this appeal, that claim preclusion would now seem to be a bar to the plaintiffs' claim in federal court. The very issues before us have been most recently decided (even if questionably) by a Michigan state court of competent jurisdiction, and a valid final judgment has been issued. One of the primary purposes served by res judicata "lies in preserving the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results." C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4404 (1981). Under the circumstances in this case, moreover, conflicting judgments

---

7. Plaintiffs' general argument, that a district court should not be able to decide the merits after abstaining, has some appeal to it. " 'Abdication of the obligation to decide cases can be justified under [the abstention] doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.' " *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (citation omitted). If a case truly presents one of the few "exceptional circumstances" in which a federal court should refuse to exercise its jurisdiction, the court normally should do just that—not exercise its jurisdiction to decide other issues as an alternative basis for its holding when it believes abstention is warranted.

Nevertheless, it was not the district court's rulings in the alternative that created plaintiffs' current problems. Had plaintiffs simply appealed the district court's rulings to us, we would have considered whether all or part of the district court's decision should be affirmed or reversed. But because of plaintiffs' strategic decision to abandon their arguments against abstention, we are unable to review the district court's decision. Although the district court's decision has created some problems for plaintiffs in their state-court litigation, plaintiffs are the ones who filed their claims in both federal and state court. While our system of federalism allows for parallel litigation in most instances, parties who take full advantage of the coordinate judicial structure also must deal with the sometimes intractable procedural and preclusion repercussions.

might undermine notions of federalism and comity. In addition to the reasons stated by Judge Moore, I would also hold in the alternative, then, that the doctrine of claim preclusion may also bar plaintiffs' action.