In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-2393 & 00-2473

United States of America,

Plaintiff-Appellant, Cross-Appellee,

v.

John Tarkowski,

Defendant-Appellee, Cross-Appellant.


Appeals from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 99 C 7308--Matthew F. Kennelly, Judge.


Argued February 14, 2001--Decided April 18,
2001


  Before Posner, Coffey, and Ripple, Circuit
Judges.

  Posner, Circuit Judge.  The government
appeals from the dismissal of a suit by
which the EPA sought access to the
property of John Tarkowski, pursuant to
section 104(e) of the Superfund statute
(Comprehensive Environmental Response,
Compensation, and Liability Act of 1980
(CERCLA)), 42 U.S.C. sec. 9604(e), for
the purpose of "remediation,"
specifically, of investigating possible
environmental hazards and removing
quantities of Mr. Tarkowski's personal
property and other materials. The judge
concluded that the action for which the
EPA sought authorization would be
arbitrary and capricious in the
circumstances presented by this case.

  Mr. Tarkowski is an elderly, impecunious
man who lives on a 16-acre tract in what
was once a rural backwater in Wauconda,
Illinois but is now an affluent suburb.
He may be land rich as a result of the
development of the area that surrounds
his 16-acre tract, but this is unclear;
he may not actually own the tract,

although his right to its possession is not in doubt.

He built the house in which he lives out of surplus materials, and his yard is full of what his upscale neighbors regard as junk, such as wooden pallets that he burns for heat because he can't afford gas, tires that he uses to build retaining walls, drums for building a culvert for water runoff, barrels, batteries, paint cans, and other construction materials and supplies, some of them the detritus of a failed project to construct a subdivision on the tract; before being disabled by injuries many years ago, Tarkowski was a building contractor.

Tarkowski's neighbors have been harassing him for many years. In 1978 a letter was left in his mailbox which says "Hey polock [sic] we don't want any white trash or white niggers here. We want you out--Now." The next year the neighbors complained about the condition of Tarkowski's property to the EPA, which the same year made a preliminary assessment and concluded that the property posed no environmental hazard despite its unsightliness. In 1995 the EPA rated the property a zero on its hazard rating scale. In 1997 state authorities at the EPA's request took and examined various soil and water samples on the property. Tests on the samples received traces of lead, but only in an area in which Tarkowski does some welding for personal, noncommercial use. Other metals, and pesticides, revealed by the tests were likewise consistent with household use; and other chemicals that the tests revealed could have come from petroleum products, which are exempt under section 101(14) of CERCLA, 42 U.S.C. sec. 9601(14). In short, there was no evidence of legally significant contamination.

The following year, however, the EPA, pursuant to an access order similar to the one sought in this case, took additional samples on Tarkowski's property, some from the soil, some from drums, and one from a piece of pipe insulation. Only trace amounts of contaminants were found, and there was no indication that they exceeded the levels of these contaminants found in the surrounding properties none of which was deemed to pose any kind of environmental

hazard or to require or justify remedial efforts. Nevertheless the EPA brought this suit, claiming without furnishing any factual basis for the claim that "the environmental contamination at the Site [Tarkowski's property] presents an imminent and substantial endangerment to the public health, welfare and the environment arising from the actual release or threat of release of hazardous substances from the Site." The relief sought was an order forbidding Tarkowski to prevent the EPA from going onto his land in order to fence it (apparently to keep children from straying onto it), conduct additional tests, install groundwatermonitoring wells, dig up the property looking for any buried drums and, if they were found, remove them, remove contaminated soil, and cart away a variety of objects lying on the property, including drums and other containers,batteries, and materials containing asbestos, all these objects being Tarkowski's personal property. The EPA is thus seeking the access order for a mixture of investigative and remedial purposes; we need not consider whether, if only the former were sought, the EPA has made a sufficient showing to justify such an order, as in United States v. Fisher, 864 F.2d 434, 438 (7th Cir. 1988)--which was, however, a much stronger case for such an order than this one is. But we will have to consider whether a request for an order limited to remediation would have a different status in the district court.

The EPA takes the extreme position that, provided it has probable cause to believe that there is even a thimbleful of a hazardous substance spilled in a person's yard, or we suppose even a drop, it has an absolute right to an access order regardless of the action it proposes to take once it gains that access, such as excavating the entire yard and removing the soil to a depth of ten feet, thus rendering the property wholly useless to its owner. The court not only must, the EPA argues, issue the order no questions asked; the court cannot limit the extent of the remedial measures that the EPA can take once it gains access. All the EPA will concede is that if it wanted to do the excavation at 3 a.m., or wanted to use a stick of dynamite to dislodge the topsoil, the court might refuse to order access. Similarly, while the agency

claims the absolute right to an access order if it learns that a single flake of asbestos is lying on the floor of Tarkowski's house, it acknowledges that the court could forbid it to use a battering ram to gain access to the house for purposes of removing the flake.

The EPA makes no pretense that the position it advocates serves a public purpose, strikes a reasonable balance be tween property rights and community rights, rationally advances the agency's mission, or even comports with the limitations that the Constitution has been interpreted to place on federal regulation of purely local activities, not to mention the limitations that the Fourth Amendment places on searches and seizures. Access orders are orders to seize as well as search, because of the control that the agency exerts over the property even when it is just doing test borings and other investigative work. That such orders must comply with the Fourth Amendment is apparent from Marshall v. Barlow's, Inc., 436 U.S. 307 (1978). Rather, the EPA defends its position as ineluctably compelled by statutory language that we have now to examine in order to determine whether the case can be decided without our having to reach any constitutional issues.

Sections 104(e)(1), (3), and (4) of CERCLA, 42 U.S.C. sec.sec. 9604(e)(1), (3), (4), authorize the EPA to go upon a property to inspect or to obtain samples for testing (sec. 104(e)(4)) or "to effectuate a response action" (sec. 104(e)(3)(D)), "if there is a reasonable basis to believe there may be a release or threat of release of a hazardous substance or pollutant or contaminant." sec. 104(e)(1). Section 104(e)(5)(B)(i) provides that if consent to the entry is denied, the government may obtain a judicial order preventing interference with the entry (what we are calling an access order) "unless under the circumstances of the case the demand for entry or inspection is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."

The requirement of reasonable basis is easily satisfied, and is satisfied here, as it would be in our thimbleful and flake examples, as there is nothing in section 104(e)(1) about magnitude. But

this makes it all the more important to consider whether the agency's proposed action is unreasonable (arbitrary and capricious). The EPA may be reasonable, though we doubt it, in wanting to conduct additional tests on Tarkowski's property--that would depend in part on how disruptive the tests would be to Tarkowski's use of the property. Cf. United States v. Fisher, supra, 864 F.2d at 438. But given what the agency now knows or has reason to know, which is that the property although unsightly is not a site or source of even a slight environmental hazard, for it to want to go ahead and rip up the property without completing its inspection bespeaks a precipitance that would be warranted only by emergency conditions. The EPA assures us that it won't undertake any drastic remedial action until it completes new tests. But, if so, why is it not seeking merely an order to allow it to go onto the property to conduct tests that would not unreasonably interfere with Tarkowski's use and enjoyment of his property? The agency is adamant in the assertion of a right to carry out remedial action whatever the test results are, or indeed before completing or for that matter beginning any further tests. We do not know whether Tarkowski's angry neighbors exert a malign influence over the local office of the EPA, but it is to protect citizens against arbitrary and over-reaching actions by government bureaucrats that courts are empowered to prevent arbitrary and capricious interferences with property rights. It is unreasonable for the EPA to insist on a judicial carte blanche to embark on drastic remedial action in advance of obtaining any rational basis for believing there is any danger to the environment that would warrant such action.

Against all this the EPA directs us to section 113(h) of CERCLA, which provides that "no Federal court shall have jurisdiction . . . to review any challenges to removal or remedial action selected under section [104]" except in a suit under section 310, 42 U.S.C. sec. 9659, complaining that "the removal or remedial action taken under section" 104 "was in violation of any requirement" of the statute (emphasis added). Although section 310 does not read like a provision designed for the benefit of

people subjected to such action, but rather seems to be a provision designed for people who think the remedial action didn't go far enough (it is captioned "citizens suits"), and it is in fact usually invoked by such people, see, e.g., Schalk v. Reilly, 900 F.2d 1091, 1094-95 (7th Cir. 1990); Clinton County Comm'rs v. EPA, 116 F.3d 1018, 1024-25 (3d Cir. 1997) (en banc); Conservation Law Foundation of New England, Inc. v. Reilly, 950 F.2d 38, 40 (1st Cir. 1991), it has been interpreted to allow a person facing potential liability under CERCLA to obtain an injunction compelling a person responsible for the pollution to comply with the statute. AM Int'l, Inc. v. Datacard Corp., DBS, 106 F.3d 1342, 1349 (7th Cir. 1997); Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1153 (8th Cir. 1999). But that is a remedy of no utility to Tarkowski. Section 310, moreover, does not authorize monetary relief, and while Tarkowski might have a defense in the unlikely event that the EPA sought under 42 U.S.C. sec. 9607 to recover the costs of its remedial efforts from him, Dickerson v. EPA, 834 F.2d 974, 978 (11th Cir. 1987), that would give him no relief from the costs imposed on him by the destruction of his property. His only recourse would be a suit against the United States under the Tucker Act to enforce his rights under the just-compensation clause of the Fifth Amendment. See United States v. Fisher, supra, 864 F.2d at 438-39. So section 113(h)'s exception for suits under section 310 is inapplicable--and anyway Tarkowski hasn't brought a suit; nor is he basing a defense against the EPA's suit on anything that can be found in section 310.

The EPA argues that section 113(h) is so sweeping, once the section 310 exception is put to one side, that it withdraws from the district court the power in considering a request for an access order to weigh the reasonableness of the removal or remedial action proposed by the agency. The argument if accepted would reduce the court's power to disallow access as arbitrary or capricious to derisory dimensions, just as the agency argues. Tarkowski would be left with only his Tucker Act remedy unless the agency tried to shift the expense of remediation to him. In effect the agency is claiming the authority to

undertake warrantless searches and seizures, of a peculiarly destructive sort, on residential property despite the absence of any exigent circumstances. It is unlikely, even apart from constitutional considerations, that Congress intended to confer such authority on the EPA.

What is true is that if all the agency were seeking was a remediation order, Tarkowski could not challenge it. But that is not all that the agency is seeking. It is seeking an access order, without which it cannot execute remedial measures on Tarkowski's property. And when an access order is sought, judicial jurisdiction clicks in; the arbitrary and capricious standard clicks in. The right of judicial review of agency action that is expressly conferred by section 104(e)(5) can thus be preserved without impairment of the objectives of section 113(h) by distinguishing between  cases in which the agency either is rightfully on the land to perform remedial measures or does not have to be on the land because the order is directed to the landowner--in either of which cases the reasonableness of the measures cannot be judicially reviewed until the remediation is completed--and cases in which the agency must get access to the land to execute remediation. The latter case, which is our case, is rare. Remedial measures normally are undertaken in circumstances in which there is no doubt that the entity undertaking the measures has a right to be on the land. Normally, indeed, the measures are to be undertaken by the landowner himself, and section 113(h) steps in to prevent someone else, who might as a party also responsible for the contamination of the property be forced to contribute to the costs of the measures, see section 113(f)(1); NutraSweet Co. v. X-L Engineering Co., 227 F.3d 776, 784 (7th Cir. 2000), or might as a concerned citizen be dissatisfied with the measures, from bringing suit to enjoin them, thus delaying the cleanup. Schalk v. Reilly, supra, 900 F.2d at 1095; North Shore Gas Co. v. EPA, 930 F.2d 1239, 1244 (7th Cir. 1991); McClellan Ecological Seepage Situation v. Perry, 47 F.3d 325, 328-29 (9th Cir. 1995); Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, 1388-90 (5th Cir. 1989). Evidently the EPA does not trust Tarkowski to undertake

whatever remedial measures it might order, and therefore it wants to undertake them itself; and to be able to do that it needs an access order.

So this case is unusual; what makes it unprecedented (for there is no previous reported case like it) is that the tension between sections 104(e)(5) and 113(h) that we are trying to dissolve is acute only when the agency, which usually has better sense, claims a right to undertake remedial efforts before determining whether there is a hazard that justifies the efforts. The usual purpose of an access order is to enable the agency to conduct on-site tests of soil or water, and off-site tests of samples of oil and water taken from the site or the adjacent area, to determine whether remedial measures are necessary. If the tests indicate the need for such measures, the agency orders them to be undertaken. 42 U.S.C. sec. 9604(a). That order cannot be challenged, as section 113(h) makes clear. (Likewise emergency orders for remediation issued under 42 U.S.C. sec. 9606(a), see In re CMC Heartland Partners, 966 F.2d 1143, 1148 (7th Cir. 1992); Kelley v. EPA, 15 F.3d 1100, 1103 (D.C. Cir. 1994), but no such order was issued here.) The EPA proceeded differently here, invoking the provision of the statute that authorizes entry "to effectuate a response action." sec. 104(e)(3)(D). By proceeding along this route, the agency placed itself squarely in the sights of section 104(e)(5). If the agency's very ground for going on the property is to undertake remedial measures, the court cannot perform its duty of determining whether the agency's proposed action is arbitrary or capricious without considering whether the measures proposed are a reasonable basis for authorizing what would otherwise be a trespass. We can find nothing in the background or purpose of section 113(h) to indicate that the court lacks this power, without which all manner of unconstitutional conduct by the EPA would be beyond the reach of judicial prevention.

We repeat that the agency is entitled to go onto Tarkowski's property for the purpose of conducting (if reasonable to do) additional tests, and if on the basis of the test results it issues a remediation order under section 104(a),

section 113(h) will prevent Tarkowski from obtaining immediate review of the order. But instead the agency has chosen a route, short-circuiting the determination whether the property poses an environmental hazard, that deprives it of its immunity from judicial review.

Now it is true that in the case just put, where the agency first obtains an access order for the purpose of testing, and then, on the basis of what the tests show, issues a remediation order, the agency would need to obtain a second access order if the property owner refused to permit the agency to go onto his property to execute the order, assuming it was the unusual case in which the agency had decided to conduct the cleanup itself rather than order the landowner to do so. The remediation order itself would not be reviewable, but, as the agency itself concedes, the time and manner of its execution would be. If the agency wanted to avoid having to go back to court for a second order, it could in its first order specify the remedial actions that it would take if the tests that it wanted to conduct showed specified levels and types of contamination. If the plan set forth for testing followed by remediation was a reasonable one, the court would issue the access order; "arbitrary and capricious" review is deferential. In this case the agency sought a blank check from the court. It sought authorization to go onto Tarkowski's property and destroy the value of the property regardless of how trivial the contamination that its tests disclosed.

If section 113(h) has the sweep that the agency contends it has, hereafter the EPA will be able to nullify judicial control of access orders by including in every application for such an order the statement that while its purpose is merely to test, it reserves the right to take unspecified remedial actions on the basis of the test results. Mere mention of remediation would on this view compel the court to issue the access order no questions asked. That would spell the abolition of the right of judicial review expressly granted by section 104(e)(5). It would give the agency in effect an unlimited power of warrantless search and seizure, something that the statute does not contemplate and that the Fourth

Amendment would almost certainly forbid.

As a procedural detail, we note that Tarkowski filed a cross-appeal, not because he wants a different judgment, which is the only basis on which a cross-appeal is either necessary or permitted, e.g., Massachusetts Mutual Life Ins. Co. v. Ludwig, 426 U.S. 479 (1976) (per curiam); Froebel v. Meyer, 217 F.3d 928, 933 (7th Cir. 2000); Stone Container Corp. v. Hartford Steam Boiler Inspection & Ins. Co., 165 F.3d 1157, 1159 (7th Cir. 1999); Coe v. County of Cook, 162 F.3d 491, 497 (7th Cir. 1998); Remus Joint Venture v. McAnally, 116 F.3d 180, 183 n. 4 (6th Cir. 1997); 15A Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure, sec. 3904, pp. 199-205 (1992), but because he wishes to urge grounds for affirmance not adopted by the court that he thinks would if we adopted them prevent the EPA from seeking even an access order limited to inspection and testing. That is not a proper basis for a cross-appeal. It seeks not to alter the judgment but to shape our opinion in a fashion that by operation of the doctrine of stare decisis will give the judgment a broader consequence. To require a cross-appeal in such circumstances would cause immense confusion, since the precise stare decisis effect of differently grounded appellate opinions will often be impossible to predict. We leave for future consideration any arguments that Tarkowski may have against a more limited access order, as we have no reason to believe that the EPA will continue to be obsessed as it has been for far too long with the minuscule threat to the environment that he poses.

Affirmed.

RIPPLE, Circuit Judge, concurring in the judgment. As the panel notes, this is a very unusual case. The Environmental Protection Agency, an agency charged with a high responsibility and an often difficult task, here seeks to gain access to an individual's property, for the purpose of continuing to inspect the land for evidence of the release or threat of a release of hazardous substances and for the purpose of effectuating a fairly extensive remedial action. What makes this case unusual is the very limited

evidence of an environmental hazard that the E.P.A. has put forward to justify its request for an access order that includes the authority to "effectuate a response action." 42 U.S.C. sec. 9604(e)(3)(D).

The panel quite properly holds that Congress, by allowing, in Section 104(e)(5)(B)(i), for review of access requests under an arbitrary and capricious standard, did not intend to tolerate such intrusions when they are based on the very limited evidence of contamination put forward in this case.

The court's analysis, while adequately responding to the narrow and unusual situation before us, does leave a conceptual and practical difficulty that is bound to emerge in future and more difficult cases. In these cases, the E.P.A. will proffer more significant evidence of the release or threat of release of hazardous substances on an individual's property and seek access to that land to investigate more accurately the nature and extent of the violation and to implement a significant remedy. In such an instance, a court will need to take into consideration the scope of the E.P.A.'s planned response action in order to carry out its responsibility under Section 104(e)(5) of determining whether "under the circumstances of the case the demand for entry [more specifically, a demand for entry to "effectuate a response action" under Section 104(e)(3)(D)] . . . is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. sec. 9604(e)(5)(B)(i). What remains unclear are the circumstances that will justify a court's denial of entry to effectuate a remedial order. Section 113(h) certainly appears to curb courts from examining the technical merit of a response action presented by the government and from micromanaging the activities that such an action could include. Yet, when the E.P.A.'s evidence of contamination allows access for some type of response action, but makes the contemplated remedy seem significantly disproportionate to the perceived violation, the limitations on the court's authority are not well-defined. Today's opinion, by suggesting that the E.P.A.'s remediation request must be reasonable, implies that there must be a proportionality between the investigative

results and the proposed plan. Such a balancing approach may result in courts assuming a great deal more latitude than Congress intended.

   Today's decision is hardly the occasion to delineate comprehensively or precisely the limits of judicial authority in such a situation. Disagreements can be expected between the E.P.A. and those that it seeks to regulate. The conflicting mandates of Section 104(e)(5) and Section 113(h) will collide far more starkly than they do in this case. More explicit congressional guidance would permit the E.P.A. to fulfill its responsibilities and the courts to respond more precisely to the legislative mandate.